AO 106 (Rev. 04/10)  Application for a Search Warrant

UNSSA CODI/17/14

# UNITED STATES DISTRICT COURT

for the

Southern District of California

13 SEP 18 PM 3: 31

| In the Matter of the Search of | )  |   |
| :--- | :--- | :--- |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. |
| Information that is stored at Google, Inc., 1600 Amphitheater Way, Mountain View, California 94043 | ) ) ) |  |

13MJ3537

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-1.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| :--- | :--- |
| 50 U.S.C. 1705, 18 U.S.C. 371 | Conspiracy to Commit and Illegal Export of U.S. Goods and Technology to Iran |
| 18 U.S.C. 1956 | Money Laundering |

The application is based on these facts:

See attached affidavit of HSI Special Agent Kevin Hamako

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Kevin Hamako
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/18/13

_____
*Judge's signature*

City and state: San Diego, California

Magistrate Judge Karen S. Crawford
*Printed name and title*



**AFFIDAVIT IN SUPPORT OF**
**APPLICATIONS FOR SEARCH WARRANTS**

I, Kevin M. Hamako, Special Agent, Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn, state:

## I.   PURPOSE OF AFFIDAVIT

1.     This affidavit is in support of an application for search warrants, pursuant to 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A), for electronic mail ("e-mail") accounts controlled by the web-based electronic mail service providers Google, Inc. ("Google"), located at 1600 Amphitheatre Parkway, Mountain View, CA 94043, which provides service to the e-mail account IdinRafiee@gmail.com ("**Subject Account 1**"); Yahoo! Inc. ("Yahoo!"), located at 701 First Avenue, Sunnyvale, CA, 94089, which provides service to e-mail accounts        MajidHNouri@yahoo.com        ("**Subject        Account        2**"), HassanRafiee55@yahoo.com ("**Subject Account 3**"), BestCoolBC@yahoo.com ("**Subject Account 4**"), and IdinRafiee@yahoo.com ("**Subject Account 5**"); and GoDaddy.com ("GoDaddy") located at 14455 N. Hayden Road, Suite 219, Scottsdale, AZ, 85260, which provides service to the e-mail accounts IRafiee@Pashaint.com ("**Subject Account 6**"), HRafiee@Pashaint.com ("**Subject Account 7**"), and VAkbari@pashaint.com ("**Subject Account 8**"); and MSN Hotmail ("Hotmail") located at 1065 La Avenida, Building #4, Mountain View,

California 94043, which provides service to the e-mail account BestCool@hotmail.com ("**Subject Account 9**"), (Collectively known as the "Target Accounts"), to disclose information associated with the Target Accounts, including subscriber information, records, and the contents of electronic communications, and thereafter to authorize government agents to search that information and seize the items described more particularly in Attachments B-1 through B-9 to this affidavit and the applicable search warrants.  I seek authority to search the Target Accounts, as described in Attachments A-1 through A-9, for items described in Attachment B-1 through B-9, respectively, that constitute evidence of violations of federal criminal law, including the International Emergency Economic Powers Act ("IEEPA"), in violation of 50 U.S.C §§ 1701-1706, the Iranian Transactions and Sanctions Regulations ("ITSR"), in violation of 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208; money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, in violation of 18 U.S.C. § 371.

2.     This affidavit is in support of a second search warrant as to **Subject Accounts 1, 3, 6, and 7**.  On December 31, 2012, Magistrate Judge Nita L. Stormes authorized federal search warrants for email content information on **Subject Accounts 1, 3, 6, and 7** (Mag. Case Nos. 13MJ0025, 13MJ0029,

2

13MJ0026, and 13MJ0028, respectively) for evidence of the same criminal violations described above in paragraph 1. Based on those results, I seek authority to search for additional evidence of criminal activity, including about deals described herein and about which evidence was recovered within **Subject Accounts 1, 3, 6, and 7**. I further seek authority to search for evidence of violations of law, as described above, in **Subject Accounts 2, 4, 5, 8, and 9**, which were identified based on a review of the search warrant results. Based on the investigation, the user for each account has been identified as listed below:

      a. **Subject Account 1**: Idin Rafiee.

      b. **Subject Account 2**: Majid Nouri.

      c. **Subject Account 3**: Hassan Rafiee.

      d. **Subject Account 4**: Vahid Akbari.

      e. **Subject Account 5**: Idin Rafiee.

      f. **Subject Account 6**: Idin Rafiee.

      g. **Subject Account 7**: Hassan Rafiee.

      h. **Subject Account 8**: Vahid Akbari.

      i. **Subject Account 9**: Hassan Rafiee.

    3. My knowledge of the facts alleged in this affidavit arises from my training and experience, my personal observations, my participation in the federal

investigation described herein, my conversations with other law enforcement agents, and my review of documents and emails obtained during this investigation. Because this affidavit is submitted for the limited purpose of securing search warrants as described herein, it does not include every fact known to me concerning this investigation.

## II.    EXPERIENCE AND TRAINING

4.      I am a Special Agent ("SA") of the United States Department of Homeland Security, Homeland Security Investigations, San Diego ("HSI-SD"), and have been so employed since August 2010.  Prior to my employment with HSI, I was employed as a Special Agent with the United States Air Force Office of Special Investigations.  I am a graduate of the Federal Law Enforcement Training Center (FLETC), Glynco, Georgia.  At FLETC, I was trained in, among other things, general criminal investigative techniques and more specific techniques related to counter-proliferation investigations.  In my current capacity, I have participated in numerous criminal investigations involving the illegal export of military and defense articles and "dual use" items (used in both civil and military functions) from the United States.  Through my training, education, and experience, I have become familiar with the manner in which commodities are exported from the United States directly or indirectly to embargoed countries to

4

avoid both reporting requirements and detection by law enforcement. I have received formal training in the laws and regulations relating to the IEEPA and ITSR, and I have conducted and participated in investigations involving these laws and regulations.

5. As a result of my training and experience in investigating matters concerning counter-proliferation, I have become familiar with the manner in which commodities are exported from the United States directly or indirectly to embargoed countries or other prohibited destinations to avoid both reporting requirements and detection by law enforcement. I am familiar with the federal laws relating to the unlawful export of arms and commodities from the United States as specified and regulated by the Department of State, Directorate of Defense Trade Control ("DDTC"); Department of Commerce, Bureau of Industry and Security ("BIS"); and the Department of the Treasury, Office of Foreign Asset Controls ("OFAC"). I am also familiar with related laws, the interpretation and application of federal laws and federal court procedures, and have previously assisted in the execution of numerous federal search and arrest warrants. As a Special Agent with HSI, I have received considerable training related to identifying the techniques, methods, and procedures employed by groups, organizations, companies, corporations, and individuals to export goods and

5

commodities in violation of United States export laws. In addition, I have received specific instruction and training in the conduct of criminal investigations associated with export law violations.

## III.   BACKGROUND

6.     The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1707, authorizes the President to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

7.     Pursuant to the IEEPA and its implementing regulations, any individual who wishes to export any goods or technology from the United States to Iran must file an application for a license and receive authorization from the United States government before exporting or attempting to export, directly or indirectly, such goods or technology.

8.     The Iranian Transactions and Sanctions Regulations imposed, among others, the following prohibitions:

Section 560.203: Evasions; attempts; causing violations; conspiracies.

(a) Any transaction on or after the effective date that evades or avoids, or has the purpose of evading or avoiding, causes a violation of, or attempts to violate any of the prohibitions set forth in this part is prohibited.

6

(b) Any conspiracy formed to violate any of the prohibitions set forth in this part is prohibited.

Section 560.204:  Prohibited exportation, reexportation, sale or supply of goods, technology, or services to Iran.

Except as otherwise authorized . . . the exportation, reexportation,  sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited . . .

Section 560.206:  Prohibited trade-related transactions with Iran; goods, technology, or services.

(a) Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, no United States person, wherever located, may engage in any transaction or dealing in or related to:

(1) Goods or services of Iranian origin or owned or controlled by the Government of Iran; or

(2) Goods, technology, or services for exportation, reexportation, sale or supply, directly or indirectly, to Iran or the Government of Iran.

(b)For purposes of paragraph (a) of this section, the term transaction or dealing includes but is not limited to purchasing, selling, transporting, swapping, brokering, approving, financing, facilitating, or guaranteeing.

Section 560.208:  Prohibited facilitation by United States persons of transactions by foreign persons.

Except as otherwise authorized pursuant to this part, and notwithstanding any contract entered into or any license or permit granted prior to May 7, 1995, no United States person, wherever located, may approve, finance, facilitate, or guarantee any transaction by a foreign person where the

7

transaction by that foreign person would be prohibited by this part if performed by a United States person or within the United States.

## IV.   PROBABLE CAUSE

9.     As set forth below, the investigation thus far has revealed evidence that Idin and Hassan Rafiee have two companies, Pasha International, based in the United States, and Pasha Tak, based in Iran, which engage in the business of purchasing and/or facilitating the purchase of items from foreign companies for export to Iran.

### A.     Background on Pasha International

10.    Pasha International Corp. ("Pasha Int.") is a corporation registered in the state of California that was incorporated by Idin Rafiee.   Pasha Int.'s webpage, www.pashaint.com, describes the company as a global distributor of residential and commercial heating and air conditioning equipment and accessories.

11.    A review of law enforcement and commercial databases revealed that Hassan Rafiee is a naturalized U.S. citizen originally from Iran, residing in San Diego, CA.   His son, Idin Rafiee, derived citizenship from his father after his father naturalized.   Idin also resides in San Diego, CA, and holds an Iranian passport expiring in May 2014.

### B.     Border Search and Subsequent Search Warrants

12.    On October 5, 2012, Department of Homeland Security, Customs and Border Protection agents conducted an outbound border search of electronic media carried by Idin Rafiee as he was boarding an international flight from San Diego, CA

to London, England.  During the border search, agents detained one (1) Dell laptop computer, one (1) Seagate external hard drive, one (1) HTC brand smart phone, and one (1) Apple iPad.

13.    On October 23, 2012, your affiant received a copy of emails obtained from the imaged computer and hard drive, and reviewed them until October 24, 2012. On November 1, 2012, U.S Magistrate Judge Ruben B. Brooks authorized search warrants (12MJ4024, 12MJ4025, and 12MJ4026) to search the above described forensic images.

### C.    Use of Subject Accounts 6 and 7 to Procure and Facilitate the Export of Air Conditioning Compressors to Iran

14.    A review of forensic images of the devices described above revealed thousands of unique email communications and documents.  One such series of emails consisted of correspondence between Idin Rafiee, using email accounts for both the U.S.-based and Iran-based Pasha companies, and Valley, a representative of an auto parts company based in China, for the purchase of items to be exported to Iran.  For example, in a February 8, 2012 email, Idin Rafiee, using **Subject Account 6**, wrote to Valley, using email account Valley@ali-shan.com.cn, and stated:

> I have forwarded the attachment and email to our team In [sic] Iran.  I will inform you as soon as I hear back from them.  In the U.S. Our [sic] company is called PASHA INTERNATIONAL and in Iran we are called PASHA TAK.  For our orders for Iran please indicate Pasha Tak in the invoices or we will give you the information of the company.

15.     On March 1, 2012, Idin Rafiee, using another email address, IRafiee@pashatak.com[1], emailed Valley a revised PFI, stating, "This is the revised PFI for the order.   Please check."   The email contained an attachment, entitled "P I From Alishan to Iran 2012-02-02 (3).xlsx," which was a Microsoft Excel spreadsheet document.   The spreadsheet document was a Proforma Invoice from Alishan Auto Parts Co., Ltd, 2F, Building 3, No. 69 Chaofu Road, JiuTing Town, SongJiang District of Shanghai, China, to Pakshoma Co, no .28 12st, ahmad ghasir ave, Tehran, Iran. The invoice, dated February 8, 2012, contained six line items, including model numbers, dimensions, photos, quantities, values, and other information for approximately $107,100 USD worth of goods.

16.     On March 13, 2012, Idin Rafiee, using **Subject Account 6**, forwarded an email from Valley to Hassan Rafiee at **Subject Account 7**.   The email contained a revised invoice.

**D.     Use of Subject Accounts 2, 3, 6, and 7 to Discuss Knowledge of U.S. Sanctions Against Iran**

17.     Additional emails recovered from the searches of the imaged computer and hard drive revealed discussions about the Rafiees' knowledge of the U.S. sanctions against Iran.   For example, on May 14, 2012, Hassan Rafiee, using email address Coldline@msn.com, emailed Idin Rafiee at **Subject Account 6**, and two other

---

[1]     Open source research revealed that the registrant for the webpage www.pashatak.com is Idin Rafiee, Idin Rafiee was also listed as both the administrative and technical contact for this webpage, and **Subject Account 1** was listed in the contact information.

email addresses, **Subject Account 7** and **Subject Account 2**.  The email contained

multiple earlier emails to Hassan Rafiee included in a forwarded chain of emails.  The

earlier emails included the following statements:

> Dear Mr. Rafiee, … , we wish to inform that due to Sanctions implemented by US on iran transactions, at present all the transactions are on hold.

> Dear Mr. Rafiee, … due to the sanctions we are unable to to [sic] take any actions at this moment.

> Dear Mr. Rafiee, … we are not in a position of accepting new orders due to sanctions.  We will update you once the situation improves and get approval from our legal department.

> Dear Mr. Rafiee, … This was delayed since no bank is ready for transaction with Iran due to US sanctions.

E.   **Use of Subject Accounts 2, 3, 6, 7 to Procure Car Air Conditioning Compressor Parts for Iran**

18.   A review of emails obtained pursuant to the search warrants for **Subject**

**Accounts 1, 3, 6, and 7** revealed that Idin Rafiee, Hassan Rafiee, and Majid Nouri[2]

used **Subject Accounts 1, 2, 3, 6, 7** to communicate regarding the brokering and

shipment of air conditioning compressors for automobiles from Taiwan to Iran.

Specifically, in late 2011, Idin Rafiee rekindled a relationship that Pasha had with an

auto parts company named Ali-Shan.  For the next year, Pasha negotiated a deal for

---

[2]      Majid Nouri, Vahid Akbari, and Poormahdi are individuals working for the Rafiees and participating in the negotiation and logistics of purchasing goods for export to Iran.

approximately $109,089 worth of air conditioning compressors. The items were shipped to them in December 2012.

19.     In the course of negotiating the deal, on June 6, 2012, Majid Nouri, using **Subject Account 2**, emailed Hassan Rafiee, at **Subject Account 3**.   The email contained previous correspondence, including a June 1, 2012 email from Idin Rafiee to "Stacy Chiang," with "Majid Nouri," "Vahid Akbari," Poormahdi@sardrizan.com, and others carbon copied.  In the email, Idin Rafiee stated he hadn't heard back about a letter of credit, and stated he needed to have an inspection done on the "products." Idin Rafiee also asked Stacy to send emails to **Subject Account 6**.

20.     On October 20, 2012, Majid Nouri, using **Subject Account 2**, emailed Hassan Rafiee, at **Subject Account 3**.  The email contained previous correspondence, including emails from June 13 and 17, 2012 in which Poormahdi wrote Stacy Chiang about the details of the costs of inspection and how Pasha was going to make payment to Alishan.  Majid Nouri, Hassan Rafiee, at **Subject Account 7**, "Vahid Akbari", "Idin Rafiee" and others were cc'd.

21.     On December 7, 2012, Stacy Chiang emailed Poormahdi, at Poormahdi@sardrizan.com, with Idin Rafiee, at **Subject Account 6**, and Hassan Rafiee, at **Subject Account 3**, cc'd.  Chiang asked Poormahdi to confirm the attached invoice and bill of lading.  The email's two attachments included a PDF document

titled "Invoice and Packing list 12MC314.pdf," a one page invoice on "XI'an Maipu International Trade Limited Company" letterhead.  The invoice was addressed to:

> *Messrs : PAKSHOMA COMPANY*
> *Contact : Mr. Idin Rafiee*
> *Tel: 0098 21 88731508 Fax: 0098 21 88731801*
> *Address : NO.28 , 12th St ,Ahmad Ghasir , Argantin Sq , Tehran , Iran*

The invoice, dated December 6, 2012, reflected the sale of 2,100 total pieces of six different models of parts listed as "air condition compressor" to be shipped "From: Shanghai, China to : Bandar Abbas Iran."  The other document was an image titled "BL COPY (revised).jpg", which depicted a bill of lading on HAFIZ DARYA SHIPPING COMPANY letterhead.  The bill of lading described a shipment of "525CTNS" weighing 16,700 kgs, from Xi'An Maipu International Trade Limited Company, to:

> *PAKSHOMA COMPANY CONTACT: MR.IDIN RAFIEE*
> *TEL:0098 21 88731508*
> *FAX:0098 21 88731801*
> *ADDRESS:NO.28,12TH ST,AHMAD GHASIR,ARGANTIN SQ,TEHRAN,IRAN*

The bill of lading also reflected shipment from Shanghai to Bandar Abbas.

### F.     Use of Subject Accounts 1, 3, 4, 5, 7, 8, and 9 to Procure Vacuum Pumps for Iran

22.     Beginning in late 2011, the Rafiees conducted a deal with a company called Wuhan Yonchi, based in Wuhan, China, for the purchase of $57,705 worth of vacuum pumps.  The initial information for the deal came in an October 17, 2011

13

email from Vahid Akbari, using **Subject Account 4**, to Idin Rafiee at **Subject Account 1**, with **Subject Account 5** cc'd.  The body of the message included a link to the webpage www.yonchi.com.

23.    On October 18, 2011, Idin Rafiee, using IRafiee@t-cmfg.com, emailed "Yonchi Teagle Young", yonchi001@126.com, stating:

> Dear Mr. Young, Past few months my father and i been discussing to open a new company (Pasha Internationa [sic] or pashaint.com iis [sic] what we are going to call it as of now) that is linked to the current company (bestcool) so we can give it a name and expand the business. i would like to discuss this matter with you and also ask you couple of questions. would u please forward me your a [sic] phone number that i can reach you at and a reasonable time.  thank you,  Best of Regards, Idin

24.    In subsequent emails on October 21, 2011, Young referenced a phone call he and Idin had in the past and indicated that he was open to helping the Rafiees. He also agreed to allow Pasha to use Yonchi's Hong Kong address on its business cards so as to not alienate companies that were concerned about the Iranian sanctions.

25.    On January 18, 2012, Vahid Akbari, using **Subject Account 8**, emailed Young, with Idin Rafiee, at **Subject Account 1**, and Hassan Rafiee, at **Subject Account 7**, cc'd.  Akbari stated:

> Dear Mr Young
> DVE vaccum pump
> ZJP-600 1PCS
> ZJP-1200 4PCS
> 2H-150 DV 6 PCS
> BEST REGARDS
> VAHID AKBARI

14

26.     On January 18, 2012, Young replied to Idin Rafiee, at **Subject Account 1**, and Hassan Rafiee, at **Subject Account 7**, cc'd.  Young stated:

> Thank you for your email. 5pcs 2H-150DV and 3pcs ZJP-1200 had been arrived the Ningbo port, so I only add 1pcs ZJP-600, 1pcs ZJP-1200 and 1pcs 2H-150DV, right?

27.     On February 7, 2012, Hassan Rafiee, using **Subject Account 7**, emailed himself, at **Subject Account 3**.  The email included two attached spreadsheets, titled "Proforma            Invoice_HSR12PF01_EUR.xls"            and            "Proforma Invoice_HSR12PF01_RMB.xls".    Proforma Invoice_HSR12PF01_EUR.xls was a Proforma Invoice, dated January 9, 2012, on Wuhan Yonchi Trading Co. Ltd. Letterhead, addressed to "MR. HASSAN RAFIEE KHAMENEH, NO. 6, TALEGHANI ALLEY, NOOR MOHAMMADI ST., ENGHELAB AVE., TEHRAN-I.R. OF IRAN."  The invoice reflected the sale of the following items, described as vacuum pumps, in the following quantities and total prices:

-2H-150DV, 6 pieces, 25,386.00 euro

-ZJP-1200, 4 pieces, 16,092.00 euro

-ZJP-600, 1 piece, 3,269.00 euro

The invoice reflected shipment from Ningbo, China, to Bandar Abbas, Iran, and included the weight and shipping terms for the shipment.  The total price for the shipment, including freight, was 45,401.00 euro, approximately $57,705.00 USD based on exchange rates as of January 9, 2012.      Proforma

15

Invoice_HSR12PF01_RMB.xls was a Proforma Invoice reflecting the same information as described above, but with prices in Chinese Renminbi.

28.    On February 8, 2012, Hassan Rafiee, using **Subject Account 9**, emailed Young, asking him to ship the items after Young received the "L/C." He stated that they were having problems with Iranian currency and that it would be more expensive if they had to proceed with a "T/T."[3] He also urged Young to go ahead and send a proforma invoice for the items, and cautioned that a T/T would take a lot longer because of issues resulting from the Iranian sanctions.

29.    On February 8, 2012, Young replied, with Vahid Akbari cc'd, stating that he had consulted others, and understood that Kunlun Bank could be used to send the money to Yonchi, but that it would be expensive to do so. The following day, Hassan Rafiee, using **Subject Account 9**, emailed Young to urge him to send the proforma invoice.

30.    I was unable to find additional communication about this deal after February 2012. However, it appears that it did proceed because on January 4, 2013, Hassan Rafiee, using **Subject Account 9,** emailed Young asking him to email a "test report" for each item on the invoice. He also added, "The container is in Bander Abbas Port and that standard office is asking for these report and I hope that after mounths [sic] we can clear the goods…" Below HASSAN's email was an email from

---

[3]    Based on my training and experience, as well as the context of the email, the reference to an "L/C" appears to be a reference to paying for the goods with a letter of credit, as opposed to paying with a "T/"T or telegraphic transfer, otherwise known as a wire transfer.

Akbari to HASSAN and IDIN in which Akbari greeted IDIN and told him that the test reports were needed. Young later responded to HASSAN and copied IDIN and Akbari with test reports for several items.

31.     In June 2013, a request was sent to OFAC for a license history for Idin Rafiee, Hassan Rafiee, Vahid Akbari, Trans-continental Manufacturing, Pasha International, and Surnyx. The search disclosed no responsive records of applications submitted by or on behalf of the subject individuals and companies, nor any OFAC licenses issued to them.

## V.     EVIDENCE LIKELY TO BE OBTAINED IN SEARCH OF TARGET ACCOUNTS

32.     The investigation thus far has resulted in evidence that the Rafiees, along with others, are in the business of acquiring goods for export to Iran. As discussed herein, the search warrants on **Subject Accounts 1, 3, 6, and 7** revealed evidence of deals with Yonchi and Alishan for air conditioning related goods. In that those search warrants were executed in early January 2013, I believe that it is highly likely that additional evidence about those transactions will be found in **Subject Accounts 1, 3, 6, and 7**. This evidence may also be found in **Subject Accounts 2, 4, 5, 8, and 9** in that those accounts were routinely copied by the Rafiees or used by them in their communications about these transactions for goods for export to Iran.

33.     Additionally, a review of the stored electronic communications in **Subject Accounts 2, 4, 5, 8, and 9**, as well as **Subject Accounts 1, 3, 6, and 7**, may

17

help identify other transactions conducted in violation of U.S. export control laws and sanctions, as well as other co-conspirators. The review of the stored electronic communications of the Target Accounts will further enable HSI to identify other possible violations and violators of U.S. export laws and sanctions. Based on my training and experience, as well as information gathered in this case, due to the complexity of international shipping and the difficulty in conducting international business, violators of export regulations are careful with their record keeping and spend a great deal of time and effort to effect their illegal transactions. Electronic communications are often the primary method for documenting their transactions and as such, in my experience, are often not deleted from the server by the e-mail account holder.

34.   Based on my training and experience, and my consultation with my fellow agents, I believe that the evidence that I seek remains in and will be found in the Target Accounts. Routinely, during previous cases we have found emails dating back several months or even years relevant to the investigation. In this case in particular, when warrants were executed on **Subject Accounts 1, 3, 6, and 7** in January 2013, evidence dating back to October 2011 was discovered. As such, I believe that the evidence I seek, as described in Attachments B-1 through B-9, will be found in the Target Accounts, described in Attachments A-1 through A-9.

//

## VI.   SEARCH PROCEDURE

### GENUINE RISKS OF DESTRUCTION OF EVIDENCE

35.   Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills.   In this case, only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

36.   The United States has not attempted to obtain this data by other means other than as described herein.

### ISP

37.   Google, Yahoo, GoDaddy, and Hotmail are Internet companies that, among other things, provide electronic communication services to its subscribers. Google, Yahoo, GoDaddy, and Hotmail's electronic mail service allow their subscribers to communicate with other subscribers and with others through the Internet.

38.   Subscribers to Google, Yahoo, GoDaddy, and Hotmail use screen names during communications with others.   The screen names may or may not identify the real name of the person using a particular screen name.

39.     At the creation of a Google, Yahoo, GoDaddy, and Hotmail account and for each subsequent access to the account, Google, Yahoo, GoDaddy, and Hotmail log the Internet Protocol ("IP") address of the computer accessing the account.   An IP address is a unique address through which a computer connects to the Internet.   IP addresses are leased to businesses and individuals by Internet Service Providers. Obtaining the IP addresses that have accessed a particular Google, Yahoo, and GoDaddy, or Hotmail account often identifies the Internet Service Provider that owns and has leased that address to its customer.   Subscriber information for that customer then can be obtained using appropriate legal process.

Procedures for Electronically Stored Information

40.     Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Google, Yahoo, GoDaddy, and Hotmail are not.   It would be inappropriate and impractical for federal agents to search the vast computer networks of Google, Yahoo, GoDaddy, and Hotmail for the relevant accounts and then to analyze the contents of the accounts on the premises of Google, Yahoo, GoDaddy, and Hotmail.  The impact on Google, Yahoo, GoDaddy, and Hotmail's business would be severe.

41.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored instant messages, stored voice messages, photographs

20

and any other content from the Google, Yahoo, GoDaddy, and Hotmail accounts, as described in Attachments B-1 through B-9. In order to accomplish the objective of the search warrant with a minimum of interference with the business activities of Google, Yahoo, GoDaddy, and Hotmail, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Google, Yahoo, GoDaddy, and Hotmail to make a digital copy of the entire content of the accounts subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged and the image will then be analyzed to identify communications and other data subject to seizure pursuant to Attachments B-1 through B-9. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

42. Analyzing the data to be provided by Google, Yahoo, GoDaddy, and Hotmail may require special technical skills, equipment and software. It also can be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary

21

non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

43.    Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months.   Keywords need to be modified continuously based upon the results obtained.   The personnel conducting the segregation and extraction of data will complete the analysis and provide the data authorized by this warrant to the investigating team within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

44.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails that identify any users of the subject account and any electronic mails sent or received in temporal proximity to incriminating electronic mails that provide context to the incriminating mails.

45.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification, segregation and extraction of data within the scope of this warrant.

## VII.   REQUEST FOR NON-DISCLOSURE BY PROVIDER

46.    Pursuant to 18 U.S.C. § 2705(b), I request that the Court enter an order commanding Google, Yahoo, GoDaddy, and Hotmail not to notify any other person,

including the subscribers of the Target Accounts, of the existence of the warrant because there is reason to believe that notification of the existence of the warrant will result in destruction of or tampering of evidence or otherwise seriously jeopardize the investigation. The involvement of the Target Accounts as set forth above is not public and I know, based on my training and experience, that subjects of criminal investigations will often destroy digital evidence if the subject learns of an investigation. Additionally, if Google, Yahoo, GoDaddy, and Hotmail or other persons notify anyone that a warrant has been issued on the Target Accounts, the targets of this investigation and other persons may further mask their identity and activity and seriously jeopardize the investigation.

## VIII. REQUEST FOR SEALING

47. It is respectfully requested that this Court also issue an order sealing, until further notice of the Court, all papers submitted in support of this application, including this affidavit, the application, and the warrant itself, except that a copy of the warrant, including its attachments, shall be served upon Google, Yahoo, GoDaddy, and Hotmail. I submit that the requested sealing is necessary because the information and items to be disclosed and seized are relevant to an ongoing investigation into the criminal activities described herein. Based upon my training and experience, I have learned that online criminals actively search the Internet for criminal affidavits and search warrants and disseminate them to other online criminals as they deem

appropriate, such as by posting them publicly online. Premature disclosure of the contents of this affidavit and related documents may compromise this ongoing investigation by, among other things, causing the subject(s) to flee and suspect(s) to destroy or alter evidence.

## IX.   CONCLUSION

48.    The information discussed herein reveals evidence that Idin and Hassan Rafiee—both U.S. persons—have two companies, Pasha International, based in the United States, and Pasha Tak, based in Iran, which engage in the business of purchasing and/or facilitating the purchase of items from foreign companies for export to Iran.  Additionally, the information demonstrates that there is probable cause to believe that violations of federal criminal law, including the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C §§ 1701-1706, the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208, money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, have occurred.  In addition, in that as described above, Idin Rafiee, Hassan Rafiee, as well as others, use the Target Accounts, described in Attachments A-1 through A-9, to communicate about their involvement in transactions of goods to Iran, as well as their awareness of U.S. sanctions prohibiting transactions with Iran, I believe there is probable cause to believe that the items identified in Attachments A-1 through A-9, contain evidence of

violations of the IEEPA, 50 U.S.C §§ 1701-1706, the ITSR, 31 C.F.R. §§ 560.203, 560.204, 560.206, and 560.208, money laundering, in violation of 18 U.S.C. § 1956; and an ongoing criminal conspiracy to commit these offenses, 18 U.S.C. § 371, as described in Attachments B-1 through B-9, respectively.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Special Agent Kevin Hamako
Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
18th day of September _____ 2013

Hon. Karen S. Crawford
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A-1**

This warrant applies to information associated with email address IdinRafiee@gmail.com, which is stored at premises owned, maintained, and controlled by Google, Inc., 1600 Amphitheatre Parkway, Mountain View, CA  94043.

## <u>ATTACHMENT B-1</u> (Page 1 of 2)

### I. Service of Warrant

The officer executing the warrant shall permit Google, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

### II. Items subject to seizure

All subscriber and/or user information, all electronic mail, images, text messages, histories, buddy lists, profiles, method of payment, detailed billing records, access logs, transactional data and any other files associated with the following accounts and screen names:

    IdinRafiee@gmail.com

The search of the data supplied by Google, Inc., pursuant to this warrant will be conducted as provided in the "Procedures For Electronically Stored Information" section of the affidavit submitted in support of this search warrant and will be limited to:

    a.    Communications, data, or attachments by, to, or involving U.S. persons such as Idin and Hassan Rafiee about or tending to discuss or indicate the export, reexport, sale, or supply of goods or services to Iran;

    b.    Communications, data, or attachments about or tending to indicate knowledge of U.S. laws and regulations governing transactions with persons or entities in Iran;

    c.    Communications, data, or attachments tending to identify others involved in the criminal activity above and below;

    d.    Communications, data, or attachments specifically referencing the following email addresses discussed in the affidavit submitted in support of the search warrant: IRafiee@pashaint.com; Vakbari@pashaint.com; Valley@ali-shan.com.cn; Stacy@ali-shan.com.tw; HRafiee@pashaint.com; IRafiee@pashatak.com; info@pashatak.com; MajidNouri@yahoo.com; hassanrafiee55@yahoo.com; Coldline@msn.com; Yonchi001@126.com; Bestcool@hotmail.com; BestcoolBC@yahoo.com; yonchi001@126.com; machinery@joysungroup.com; sales@joysungroup.com;

## <u>ATTACHMENT B-1</u> (Page 2 of 2)

apichart@kulthorn.com;   talati@tisa-co.com;   Boban.Das@danfoss.com;   and
Poormahdi@sardrizan.com;

e.      Communications, data, or attachments that tend to provide context to any
communications above such as electronic mail sent or received in temporal
proximity to any relevant communications or communications, data, or
attachments tending to identify the user of or person with control over the
account IdinRafiee@gmail.com;

which tend to prove violations of law, including the International Emergency
Economic Powers Act ("IEEPA"), in violation of 50 U.S.C §§ 1701-1706, the Iranian
Transactions and Sanctions Regulations ("ITSR"), in violation of 31 C.F.R. §§
560.203, 560.204, 560.206, and 560.208; money laundering, in violation of 18 U.S.C.
§ 1956; and an ongoing criminal conspiracy to commit these offenses, in violation of
18 U.S.C. § 371.